UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22814-CIV-ALTONAGA/Reid

**CARLOS MORERA**,

    Plaintiff,
v.

**UNITEDHEALTHCARE
INSURANCE COMPANY**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendant, UnitedHealthcare Insurance Company's [Rule] 12([b])(6) Motion to Dismiss [ECF No. 15], filed on October 14, 2024. Plaintiff, Carlos Morera filed a Response in Opposition to Defendant's Motion to Dismiss [ECF No. 23], to which Defendant filed a Reply in Support of its [Rule]12(b)(6) Motion [ECF No. 26]. The Court has carefully reviewed the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I.   BACKGROUND**

This action arises from an insurance coverage dispute between Plaintiff, the beneficiary of a group health benefit plan (the "Plan"), and Defendant, the Plan's insurer and administrator. (*See generally* Compl. [ECF No. 1]).  The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1001 *et. seq.*, governs the Plan. (*See* Compl. ¶ 2).

In September 2023, Plaintiff received a rare, life-threatening tongue cancer diagnosis. (*See id.* ¶ 43; *see also* Resp. 2).[1] Due to the "anatomic complexity" of Plaintiff's tumor, and its location

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

in the oral cavity at the base of the tongue, Plaintiff's radiation oncologist recommended Proton Beam Radiation Therapy ("PBRT") to treat the disease. (Compl. ¶ 46; *see also id.* ¶¶ 44–46). PBRT is different than more "traditional" forms of radiation therapy, because it "uses protons to deliver a curative radiation dose to a tumor, while reducing doses to healthy tissues and organs[.]" (*Id.* ¶ 13 (alteration added)). On October 6, 2023, Plaintiff's cancer center placed an urgent request with Defendant for pre-authorization of coverage for PBRT under the Plan. (*See id.* ¶ 47). Defendant denied coverage on October 16, 2023, stating that Plaintiff failed to show PBRT was the "most effective" treatment option. (*Id.* ¶ 49; *see id.* ¶¶ 47–49).

On November 6, 2023, Plaintiff's radiation oncologist submitted an expedited appeal to Defendant of its coverage decision, including comparisons between PBRT and a more conventional treatment showing "a marked reduction in radiation to [Plaintiff's] brainstem and esophagus" by using PBRT. (*Id.* ¶ 51 (alteration added)). Defendant upheld its original decision, concluding that PBRT had "not been shown to be safe or beneficial for [Plaintiff's] stage and diagnosis[,]" making the treatment "not medically necessary." (*Id.* ¶ 52 (alterations added); *see also id.* ¶¶ 51–52). Plaintiff subsequently sought an external review, which resulted in the same outcome. (*See id.* ¶¶ 56–57).

Despite Defendant's decision to deny coverage, Plaintiff continued with PBRT and achieved positive results. (*See id.* ¶ 6.) He now brings the present action against Defendant, asserting a single claim for improper denial of benefits under ERISA. (*See id.* ¶¶ 59–67). Plaintiff claims Defendant violated ERISA in its denial of his PBRT coverage by failing to (1) provide prompt and reasonable explanations of the bases relied on for denial; (2) properly investigate the merits of the medical claims and provide Plaintiff with a full and fair review; (3) thoroughly evaluate Plaintiff's medical records and provide him with a copy of the guidelines relied upon; and

(4) consider "overwhelming medical evidence" proving the safety and effectiveness of the requested treatment. (*Id.* ¶ 63). Plaintiff seeks to recover the $195,668.90 he paid out-of-pocket for PBRT. (*See id.* ¶ 66).

In response, Defendant filed the present Motion, asserting Plaintiff fails to allege sufficient facts to maintain an ERISA claim for improper denial. (*See generally* Mot.; Reply).

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint; it does not decide the merits of the case. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "In other words, a plaintiff must provide the grounds for his entitlement to relief but needn't include detailed factual allegations." *Soho Ocean Resort TRS, LLC v. Rutois*, No. 21-cv-11392, 2023 WL 242350, at *2 (11th Cir. Jan. 18, 2023) (citing *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III. DISCUSSION

Plaintiff brings this action under 29 U.S.C. section 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan." *Id.* Section 1132(a)(1)(B) effectively functions as a "contract-based cause[] of action," relying on the terms of the beneficiary's plan to inform the claim. *Neubarth v. Hartford Life and Acc. Ins. Co.*, 792 F. Supp. 2d 1360, 1363 (S.D. Fla. 2011) (alteration added; citations omitted).

Defendant argues the Court must dismiss the Complaint because Plaintiff does not allege facts conveying PBRT was both (1) "Medically Necessary" and (2) not excluded as an "Unproven Service" under the Plan. (Mot. 3). Defendant posits that to make a plausible showing of medical necessity, and to rebut a treatment's exclusion as an unproven service under the Plan, Plaintiff needed — and failed — to identify specific trials or studies in the Complaint. (*See id.* 2–3). Plaintiff maintains the Complaint sufficiently states a claim for wrongful denial under the Plan. (*See* Resp. 5–15). The Court addresses both of Defendant's arguments, in turn.

***Medically Necessary.*** As Plaintiff details, services considered "medically necessary", and, thus, covered, under the Plan must be:

> [(1)] In accordance with Generally Accepted Standards of Medical Practice;
> [(2)] Clinically appropriate . . . . ;
> [(3)] Not mainly for [the beneficiary's] convenience or that of [the beneficiary's] doctor . . . . ; and
> [(4)] Not more costly than [] alternative . . . service(s) . . . [that are] at least as likely to produce equivalent therapeutic . . . results . . . .

(*See* Compl. ¶ 27 (some alterations in original; other alterations and numbering added); *see also* Mot. Ex. A, Plan [ECF No. 15-1] 12; 72).[2]

---

[2] The Court may venture outside the four corners of the Complaint to view the attachments to Defendant's Motion, because the attachments — representing the text of the Plan and the denial communications — are (1) central to Plaintiff's claim; and (2) undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

The Plan defines "Generally Accepted Standards of Medical Practice" as "based on credible scientific evidence published in peer-reviewed medical literature[,] . . . relying primarily on controlled clinical trials, or, if not available, observational studies from more than one institution that suggest a causal relationship between the service or treatment and health outcomes." (Compl. ¶ 28 (alterations added; quotation marks omitted); *see* Plan 72).

To show the medical necessity of his treatments, Plaintiff alleges facts speaking to PBRT's acceptance in the medical community. He details the existence of multiple "nationally-recognized medical organizations" and "peer-reviewed studies" validating the "safety and effectiveness of PBRT." (Compl. ¶ 17). He pleads the support and recommendation of PBRT by two medical organizations (*see id.* ¶ 18), and 12 cancer facilities and providers (*see id.* ¶ 20). Plaintiff further presents his oncologist's reasoning for recommending PBRT. (*See id.* ¶ 46 (noting the tumor's "anatomic complexity" and location close to "critical nerves and blood vessels")). Finally, Plaintiff asserts his oncologist performed a "comparison plan" detailing the effectiveness of PBRT over a more conventional treatment option. (*Id.* ¶ 51).

Still, Defendant asserts Plaintiff must allege the "existence of *specific*" controlled clinical trials or observational studies based on the Plan's definition of "Generally Accepted Standards of Medical Practice," to state a plausible claim for relief and avoid dismissal. (Mot. 8 (emphasis added)). Modern pleading standards simply do not demand this level of specificity.[3] *See Twombly*, 550 U.S. at 545 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" (alterations added)). The Court takes Plaintiff's references to the

---

[3] Notably, the terms of the Plan do not seem to demand these studies to show a treatment aligns with generally accepted standards of medical practice. (*See* Plan 72). Directly under the portions quoted by both parties in their respective memoranda, the Plan states that "[i]f no credible scientific evidence is available, then standards that are based on Physician specialty society recommendations or professional standards of care may be considered." *Id.* (alteration added).

existence of "peer-reviewed studies" (Compl. ¶ 17), and support of PBRT by multiple medical organizations (*see id.* ¶¶ 18–20) as true, viewing the facts in the light most favorable to Plaintiff. *See Brooks*, 116 F.3d at 1369 (citation omitted)).

Although there "may be cases in which it is clear from the face of a complaint that the plaintiff failed to plead *any* facts that — if accepted as true — would permit relief under [section] 1132(a)(1)(B)," this is not one of them. *Williamson v. Travelport, LP*, 953 F.3d 1278, 1291 (11th Cir. 2020) (emphasis and alteration added; reversing the district court's decision to dismiss a section 1132(a)(1)(B) claim under Rule 12(b)(6)).[4] Plaintiff alleges enough to state a plausible claim of breach of contract.

***"Unproven Services" Exclusion.*** In addition to showing medical necessity, Defendant asserts Plaintiff must surpass another pleading hurdle to state a claim. (*See* Mot. 9–10). According to Defendant, to bring a claim seeking benefits under the Plan, Plaintiff must allege his treatment falls outside the Plan's "Unproven Services" exclusion. (*See id.*; *see also* Plan 31). The Plan defines "Unproven Services" as services "not determined to be effective for treatment of the medical condition . . . due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature." (Plan 76 (alteration added)). Defendant interprets this portion of the Plan to imply

---

[4] Similarly, the Court is unconvinced Defendant's reliance on *Sanctuary Surgical Centre, Inc. v. Aetna Inc.*, 546 F. App'x 846 (11th Cir. 2013), lends support to Defendant's argument. (*See, e.g.*, Mot. 7). As Plaintiff rightfully notes (*see* Resp. 7–8), that case involved a provider bringing a claim seeking benefits on behalf of many patients. *See Sanctuary Surgical Ctr.*, 546 F. App'x at 849 (representing claims for 1,857 patients). The complaint in *Sanctuary Surgical Centre* lacked facts speaking to the medical necessity of the treatment in each patient's specific case. *See id.* at 850–51. As such, the court dismissed the case for failing to provide sufficient facts to create a plausible inference of medical necessity "*for each plaintiff in question.*" *Id.* at 850 (emphasis added).

Plaintiff's Complaint is distinguishable from the one discussed in *Sanctuary Surgical Centre*. Plaintiff alleges specific details regarding his *personal* medical condition and the Plan's relevant language to create a plausible inference of medical necessity for *his* specific case. (*See generally* Compl.).

Plaintiff must plead "[w]ell-conducted randomized controlled trials" or "cohort studies" or face dismissal of the Complaint. (Mot. 9–10 (alteration added)).

Again, the Court disagrees with the suggestion that Plaintiff must plead information regarding exact trials and studies to avoid dismissal under Rule 12(b)(6). *See, e.g.*, *Soho Ocean Resort TRS, LLC*, 2023 WL 242350, at *2 ("The threshold for surviving a motion to dismiss for failure to state a claim under rule 12(b)(6) is a low one." (citation omitted)). In any event, Plaintiff need not plead around exclusions in his Complaint *at all*.

The Court reminds Defendant that a policy exclusion is generally regarded as an affirmative defense.[5] *See TGR Oasis (Tower One), Ltd., v. Crum & Forster Specialty Ins. Co.*, No. 22-21346-Civ, 2022 WL 4631917, at *3 (S.D. Fla. Sept. 14, 2022) ("[I]t is a valid affirmative defense to claim damages are nonrecoverable based on a policy exclusion." (alteration added; citation omitted)), *report and recommendation adopted*, No. 22-21346-Civ, 2022 WL 4599056 (S.D. Fla. Sept. 30, 2022); *see also Gonzalez v. Scottsdale Ins. Co.*, No. 20-20747-Civ, 2020 WL 1891328, at *2 (S.D. Fla. Apr. 16, 2020) ("[G]enerally contract exclusions are properly pled as affirmative defenses." (alteration added; citation omitted)).

Further, "[a] plaintiff *is not required* to negate an affirmative defense in its complaint. Thus, generally, the existence of an affirmative defense will not support a motion to dismiss." *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976 (11th Cir. 2015) (alterations adopted; additional alteration and emphasis added; citations and quotation marks

---

[5] While Judges in the Southern District of Florida disagree as to whether defendants should assert insurance policy exclusions as affirmative defenses or denials, the case law reflects that defendants bear the burden to prove exclusions that divert from a list of covered services. *See ICA Inv., Inc. v. Lexington Ins. Co.*, No. 22-81845-cv, 2023 WL 1987866, at *2–3 (S.D. Fla. Feb. 8, 2023) (recognizing the split and deciding an insurance exclusion that "would otherwise have been covered but is excluded for some other reason" is an affirmative defense; collecting cases)).

omitted). Plaintiff is under no obligation to anticipate affirmative defenses or to include relevant facts pleading around defenses in his Complaint. *See id.* at 977.

Defendant, not Plaintiff, bears the burden of proving the exclusion applies to deny the benefit. *See Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 599–600 (11th Cir. 1998) ("A plaintiff suing under ERISA bears the burden of proving his entitlement to contractual benefits unless the insurer claims that a specific policy exclusion applies to deny the benefits, in which case the insurer generally must prove the exclusion prevents coverage." (citation omitted)); *see also Prelutsky v. Greater Ga. Life Ins. Co.*, 692 F. App'x 969, 972 (11th Cir. 2017) ("[T]he burden is on the administrator to show that the exclusion prevents coverage." (alteration added; citation and quotation marks omitted)). While Plaintiff *does* arguably plead facts sufficient to rebut his treatment's exclusion under the terms of the Plan, such efforts are unnecessary to state a plausible claim of breach of the Plan.[6]

Pleading specific "trials" or "studies" and rebutting the affirmative defense of exclusion are simply not required. The Court rejects Defendant's invitation to discuss the merits of the case prior to development of the evidentiary record. Indeed, the Court welcomes an analysis of relevant medical literature and studies and the merits of PBRT's potential exclusion under the Plan at the proper stage of this proceeding — summary judgment or trial. The Court will not conduct such analysis in evaluating a Rule 12(b)(6) motion, when Plaintiff need not support the Complaint's allegations with items of proof. *See Innovative Strategic Comm., LLC v. Viropharma, Inc.*, No.

---

[6] In its Motion and Reply, Defendant makes much of *Niese v. United Healthcare Services, Inc.*, 507 F. Supp. 3d 902 (N.D. Ohio 2020), to support its argument that Plaintiff must plead facts alleging the Plan's exclusion did not apply. (*See* Mot. 10; Reply 8–9). Again, "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (alteration added; citations omitted). While Defendant asserts in its Reply, for the first time, that the exclusion clearly appears on the face of the Complaint (*see* Reply 5–6), the undersigned disagrees.

11-cv-1838, 2012 WL 3156587, at *6 (M.D. Fla. Aug. 3, 2012). Nor will the Court require Plaintiff to plead around affirmative defenses, the burden of which properly lies with Defendant.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Rule 12([b])(6) Motion to Dismiss **[ECF No. 15]** is **DENIED**.

2. Defendant shall respond to Plaintiff's Complaint **[ECF No. 1]** by **December 3, 2024**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of November, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record